JOVNES, J.
The only question presented by this appeal is, whether the president and directors of the Farmers’ Bank had authority to convey the assets of the bank by the deed of January 19, 1867, in trust for the benefit of the noteholders, in preference to depositors and other general creditors of the bank.
The plaintiff claims to be a creditor of the bank by virtue of a general deposit. It is well settled, and the principle has not been controverted in this case, that a general deposit of money in a bank creates the relation of debtor *and creditor between the bank and the depositor. Though we call it a deposit, it is a loan, and not a bailment. Commercial Bank v. Hughes, 17 Wend. R. 94; Marine Bank v. Fulton Bank, 2 Wall. U. S. R. 252; Pilling on Merc. Accounts 53; Dowes v. Phoenix Bank, 6 Hill’s R. 297.
It is contended for the appellants, that it was competent for the bank, though it was insolvent and had suspended business in consequence of its insolvency, to give preferences among its creditors; that this right belonged to the bank under the law as it existed when the act of February 12, 1866, was passed, and that it was not taken away or impaired by that act. On the part of the appellee it is contended, that when a bank has become insolvent and suspended business in consequence of its insolven cy, its assets become a trust fund to be applied to the payment of all its debts, for which there are no specific liens, ratably; and that the bank has no right to make an assignment giving preference to some of its creditors over others, so as to defeat this ratable distribution. And it is further contended, that if the bank had power, under the laws as they stood before the passage of the act of February 12, 1866, to make an assignment for the benefit of some of its creditors in preference to others, notwithstanding its insolvency and suspension, that right was taken away by the act of February 12, 1866.
In the view which I take of the case, it is not necessary to consider what would have been the rights and powers of the bank if the act of ’February 12, 1866, had not been passed. By the laws in force before the passage of that act, authority was reserved to the legislature to alter, modify or repeal the charter of the Farmers’ Bank at its pleasure. If, therefore, the bank had the power claimed for it, either under the general principles of law applicable to corporations, or by reason of the provisions of its charter, *it was competent for the legislature to restrict it, or to take it away altogether. No objection could be made to such an act on the ground that it takes away a vested right of the corporation, or impairs the obligation of the contract between the corporation and the State. The right of the State to alter or repeal the charter entered into the contract as an essential part of it, and the corporation could not make an exercise of that authority a ground of complaint as an invasion of its rights. Anderson v. Commonwealth, supra 295. The decision of this case must turn, therefore, upon the construction of the act of February 12, 1866. And by the express terms of the deed the preference which it proposes to give to the noteholders is made dependent upon the right of the bank, under the said act, to give such a preference.
The events of the late war reduced all the banks of circulation in the State to a condition of utter and hopeless insolvency. They suspended business from necessity, and there was no possibility of a resumption. It only remained to wind them up, and to distribute among their creditors such remnants of their assets as might be realized. In this condition of things, and to *698 accomplish this object effectually and upon equitable terms, the act of February 12, 1866, was passed. It is entitled “An act requiring the banks of this Commonwealth to go into liquidation. It proceeded, however, upon the assumption, that the banks were already in a course of liquidation, forced upon them by the calamities of the war, and its purpose was to provide regulations by which, as recited in the preamble, ‘ ‘a speedy settlement of the affairs of said banks should be made, in order to a legal and proper distribution of their assets amongst all persons entitled to share in such distribution.”
The first section of the act provides that it shall be lawful for the president and directors of any bank of circulation, chartered by the General Assembly of Virginia, to *make a deed conveying all the assets of the bank to such persons as they may select, and providing that ‘ ‘the proceeds of said assets shall be distributed amongst all persons, corporations and associations entitled .to share in such distribution according to the legal rights and priorities of such persons, corporations and associations at the time such deed shall be executed.” This provision plainly contemplates that the deed shall recognize and respect existing priorities, which neither the bank nor the Legislature could destroy or impair; but it gave . no authority to create new ones. The act did not undertake to ascertain the rights and priorities of different classes of creditors, or to lay down any rules upon that subject. It left them to be ascertained in each case according to the particular facts and the law applicable' to them. It contemplated that, subject to such existing priorities, equality should be the rule of distribution.
The second section makes a provision, the object of which is to prevent any creditor from obtaining by suit more than his “just and ratable share in the distribution of the proceeds of the assets of the bank,” and thus to preserve the equality contemplated by the first section. This section is in these words: “That whenever any creditor or creditors of any bank of circulation of this Commonwealth shall, by any suit or legal process whatsoever, seek to obtain a judgment, decree or order, which said judgment, decree or order when rendered or made would create a lien in favor of such creditor or creditors upon the assets of said bank, or upon any portion of such assets, and thereby entitle such creditor or creditors to receive more than his or their just and ratable share or shares in the distribu-, tion of all the assets of said bank, then and in that case, and in order to preserve the just rights of all creditors of said bank to a fair pro rata distribution of the proceeds of said assets, and for the ^purpose of effecting such distribution, it shall be the duty of the president and directors of said bank, and they are hereby required to make, or cause to be made, a deed of convejTance of the assets of said bank in such manner and form and for such purposes as are provided for in the first section of this act.” This provision in effect declares, that each creditor of the bank is entitled to his “ratable share” in “a fair pro rata distribution” of the assets of the bank, and plainly 'implies that such is to be the rule of distribution in case no deed shall be made. The deed is required to be made only when it shall become necessary to prevent a disturbance of this rule of distribution; the object of the deed is not to establish the rule, but to “preserve” it. This view is confirmed by the third section, which makes it the duty of the banks, or their legal representatives, “on the 1st day of April, 1866, and quarterly thereafter until final liquidation,” to publish a statement of their condition, ‘ ‘and to make distribution of the assets on hand at the end of each quarter, according to the provisions of the first section of this act, so far as the same can be done consistently with 'the interests of all the creditors of said banks.” This provision shows, that the rule of distribution was established by the first section, and that the same rule is to be observed in every quarterly distribution “until final liquidation. ’ ’
I have already shown, that the establishment of a general rule of distribution, which could not be defeated or disregarded by the banks, was no invasion ■ of their rights. And it was eminently just and legal banks had ceased to exist for' the purposes for which they were created. A resumption of their operations as banks was impossible. The stockholders had no longer any interest in them. It only remained to wind them up for the benefit ‘of their creditors. Under such circumstances, there was proper. Among creditors having no priorities, equality .was equity. The *no reason of policy or justice why the banks should be allowed to make arbitrary preferences between those whose rights were equal. The Legislature, therefore, determined to treat their assets as a trust fund, to be' distributed among the creditors generally in proportion to their respective 'debts, subject only to existing priorities, legal or equitable.
It only remains to enquire, whether the noteholders were entitled to priority over depositors’or other general creditors. They had no lien, and therefore no priority at law. Nor is there any rule of equity upon which they could claim priority. It was so held by the Supreme court of Massachusetts in Stockholders of Cochituate Bank v. Colt & al., 1 Gray’s R. 382. In the matter of the Franklin Bank, 1 Paige’s R. 249, general depositors claimed, upon more plausible grounds, that they were entitled to priority over the noteholders, but their claim was overruled by Chancellor Walworth. It was held, in both cases, that the noteholders of an insolvent bank stand upon the same footing as other general creditors.
I am of opinion, therefore, that the decree should be affirmed.
The other judges concurred in the opinion of Joynes, J.
Decree affirmed.